In this matter the original bill was filed on January 17th, 1946, and the defendants named therein filed answers. The *Page 239 
issues raised came on for a hearing, and the conclusions reached by the court are reported in 139 N.J. Eq. 144; 50 Atl. Rep.
2d 161. A final decree was filed January 27th, 1947.
On March 24th, 1947, a petition was filed herein by Margaretha Grappendorf Blakeman, also known as Meta Grappendorf Blakeman, and Johann Wilhelm Grappendorf, also known as John William Grappendorf, of the City of New Orleans, and State of Louisiana, wherein they allege that they are sister and brother respectively of the decedent, Conrad Cantzen; that they had "no knowledge of the admission of said last will and testament of Conrad Cantzen to probate." The application for probate of the Guaranty Trust Company of New York, the executor named in said will, and which corporation qualified as executor thereof, recites "That said testator departed this life at New York, N.Y., on the 28th day of June A.D. 1945, being at the time of his death a resident of Hudson County and State of New Jersey and leaving him surviving as his heirs-at-law and next of kin the following persons — None to the knowledge of your petitioner."
The petitioners state they were not made parties to the original bill of complaint and did not learn "until a short time prior to the date hereof" that proceedings were had in this court to construe the said will of Conrad Cantzen, deceased, and the residuary trust thereunder. They assert they are necessary parties to the suit for the reason that they are the only next of kin of Conrad Cantzen, and are the persons who will be entitled to the residuary estate if the provisions of the residuary clause of the will are declared to be inoperative and void. The petitioners further assert that the decree heretofore entered violates their rights and deprives them of their property without due process of law. They pray that the decree be revoked and set aside; that all proceedings in the cause be stayed until the further order of this court, and that the complainant take such steps as are necessary to bring them in as parties to the suit.
On May 7th, 1947, this court ordered that paragraphs numbered 1, 5 and 6 of the decree made herein on January 27th, 1947, be vacated, revoked and set aside, and further *Page 240 
ordered that within 20 days from the date thereof the complainant take such steps as are necessary to amend the bill of complaint and to join the petitioners, Margaretha Grappendorf Blakeman, also known as Meta Grappendorf Blakeman, Johann Wilhelm Grappendorf, also known as John William Grappendorf, and also Frank Mark Bartlett, a nephew of the decedent, and all other persons who claim to be heirs-at-law and next of kin of Conrad Cantzen, deceased, as parties defendant thereto; that within such time a copy of the bill of complaint as amended be served upon the defendants; that all defendants have 20 days after the service upon them of the said bill of complaint as amended within which to file their answers thereto; and that upon the filing of said answers the complainant bring the cause on for final hearing in accordance with the rules and the practice of this court.
On May 22d 1947, an amendment to the bill of complaint was filed and the parties aforesaid were joined as defendants, and filed answers. Subsequently, a final hearing was had.
In and by the provisions of the testator's will, he made the following disposition of his residuary estate:
"Second. All the rest, residue and remainder of my estate I give and bequeath to The Guaranty Trust Company of New York City having an office's at 140 Broadway Borough of Manhatten City of N.Y., In trust however, for the uses and purposes and upon the terms contained in the resolution and declaration of trust creating the New York Community Trust heretofore adopted by said Board of directors of said Guaranty Trust Company and filed for record as provided by law all of which resolution and declaration incorporated herein, provided
 (2)
however, that I desire this trust fund shall bear the name `Conrad Cantzen Memorial Fund' and that the net income thereof shall be applied in such manner and form as shall be determined by the Actors Equity Association, a Voluntary Association having a President and Treasurer now located at 45 W. 47th Street N Y City, and shall be applied through said association for the purpose of supplying footwear to present and future members of said Association and of the chorus Equity and to all needy actors of the theatrical profession, I leave the `Conrad Cantzen Shoe fund' for the people who cant buy shoes, even if they are not paid up members of Equity. Many times I have been on my uppers and the thinner the soles of my shoes were the less courage I had to face the manager in looking for a job. At the end of each year the income that is not used should be given to the Actors Fund of America. *Page 241 
"If at some future date said Actors Equity Association decide that under the then existing circumstances the charitable purposes which I have herein determined upon are no longer appropriate or practicable and/or that some other method of distribution for the purpose of supplying the needs of the Theatrical profession, then the purpose of said trust shall be such as under the then existing circumstances The Actors Equity Association and the Actors Fund of America shall determine; and should these associations and their legal successors cease to exist then it is my request that the N. York Community Trust in carrying out the purpose of this will shall confer with three of the then leading association's having for their object charitable purposes in which members of the Theatrical profession are beneficiaries, and thereafter determine the uses of said income."
The complainant, Guaranty Trust Company of New York, adopted the resolution and declaration of trust on May 28th, 1928, referred to in testator's will, and in so doing became one of the trustees of the said The New York Community Trust, and thereby agreed to:
"accept any gift, grant, devise or bequest in trust for public educational, charitable or benevolent uses and purposes contained in any instrument which shall have annexed thereto a copy of the resolution and declaration and/or shall effectually identify and incorporate the same by reference and thereby conclusively assert to and adopt (1) all the provisions herein specified, or (2) all the provisions herein specified, but express a desire of the maker (a) as to the time when and the purpose for which the principal shall be distributed, and/or (b) as to the purpose for which the income shall be used for a definite or indefinite period, or (3) all the provisions herein specified, but express a desire of the maker that the time when and the purposes for which the principal and/or income shall be used shall be determined solely by the members of the Distribution Committee hereinafter referred to, appointed by the Trustees."
The resolution also provided in Paragraph III that:
"The estate in any property, real or personal, from time to time given, granted, devised or bequeathed to any one of the Trustees for the uses and purposes, upon the conditions and subject to the provisions herein expressed, shall be deemed to be an estate in severalty and shall be held and administered by the Trustee to which such gift, grant, devise or bequest shall be made; but * * * the Trustees shall have no power of disposition ever, or to select or appoint the beneficiaries of the rents, profits and income of any such property or to allot the amount to be paid to any of them, such power of selection, appointment and allotment and the duty to exercise it being conferred and imposed upon the Distribution Committee, except as otherwise stated herein." *Page 242 
The reference in the will to the resolution and declaration of trust creating the New York Community Trust, indicates that the New York Community Trust is a charitable foundation whose purpose is to encourage and promote gifts for educational, charitable and benevolent uses in accordance with the plan which, (a) meets the changing needs for such gifts with flexibility in the power of distribution required by factors which constantly render trusts created for specific objects superfluous, and compliance with their terms unwise, impracticable or impossible; (b) insures the administration of such trusts in a manner most effectual to accomplish their general purpose without regard to and free from any specific restriction, limitation or direction contained therein; (c) safeguards and provides for the permanent security of the principal of such gifts; and (d) provides for the selection of the beneficiaries of such gifts when the principal purpose of the trust is found impracticable or impossible to be carried out, by an impartial committee of changing persons, chosen for their knowledge of the educational, charitable or benevolent needs of the times.
The defendants Actors' Fund of America, Actors' Equity Association, and Chorus Equity Association, say that:
(1) No ambiguity is presented by the terms of the will, the intention of the testator being clearly to provide for an incorporation of the terms of the said resolution and declaration into his last will, conditioned however, and the provisions of the same to take effect and become operative only upon Actors' Equity Association and Actors' Fund of America ceasing to exist.
(2) The charitable purposes which the said testator determined upon — distribution of footwear for needy actors of the theatrical profession — are no longer appropriate or practicable. The Actors' Equity Association and the Actors' Fund of America have so determined by appropriate resolutions of their governing bodies, therefore the income of the funds held by the complainant as trustee, should be disposed of by direct payment by the Guaranty Trust Company to the Actors' Fund of America to be first used by the Fund for those entitled thereto under the will of the deceased testator, for shoes, and *Page 243 
the balance as annually determined to be set aside by the Fund for its general charitable purposes.
(3) The trust established by the deceased Conrad Cantzen is a trust for a public charity and does not violate the rule against perpetuities.
(4) The New York Community Trust has no voice in the allocation or distribution of the income for the said trust at this time.
(5) The complainant is obliged to turn over all of the income from the "Conrad Cantzen Memorial Fund" to the Actors' Fund of America.
(6) The Actors' Fund of America is a charitable organization and effects through its work the charity contemplated by the testator in establishing the trust fund that bears his name.
The defendant The New York Community Trust says:
(1) The will of Conrad Cantzen is ambiguous.
(2) The desires of the testator as set forth in his will are merely precatory and not mandatory and it was the express intention of the testator to adopt and incorporate within the terms of his will all of the provisions of the resolution and declaration of trust creating The New York Community Trust, particularly the provisions of section II of said resolution, in order that the "Conrad Cantzen Memorial Fund" would become a part of The New York Community Trust under the broad plan of charitable uses set forth in said resolution.
(3) When and if the specific charitable use to which the testator gave his primary concern should no longer be deemed necessary, desirable, practicable or possible, the said trust fund could then be applied to the over all charitable uses for which the said The New York Community Trust was created.
(4) The trust established by the deceased Conrad Cantzen is a trust for a public charity and does not violate the rule against perpetuities.
(5) The determination of when, if ever, the charitable purpose of the trust is no longer necessary, is solely a function of The New York Community Trust and neither the Actors' Equity nor The Actors' Fund may make this determination. *Page 244 
(6) The purpose of the Cantzen trust has not been proven to be impractical and inappropriate.
The defendant heirs and next of kin aforesaid contend that (1) the gift is for benevolent as well as for charitable purposes; (2) the gift is vague, uncertain and indefinite as to its purpose; (3) the gift is vague, uncertain and indefinite as to its manner of execution; (4) the gift violates the rule against perpetuities; (5) Actors' Equity Association and Chorus Equity Association are unincorporated associations and cannot take as trustee; (6) the cy pres doctrine is not applicable because decedent directed the disposition of the fund in the event of failure of his first purpose; (7) the gift is not saved by R.S.15:14-6 because none of the organizations mentioned in decedent's will are corporations of New Jersey; (8) the gift, being void, the estate vests in the next of kin of decedent.
A consideration of all the testimony submitted herein, which includes that presented by the defendants Margaretha Grappendorf Blakeman, Johann Wilhelm Grappendorf, and Frank Mark Barlett, has not changed the conclusion that I have heretofore reached as expressed in my opinion reported in 139 N.J. Eq. 144;50 Atl. Rep. 2d 161. The complexion of the facts and law as heretofore presented to this court and as determined by it, is not changed in any respect by the joinder and contentions of the heirs-at-law and next of kin of the decedent as parties defendant.
It has been established to my satisfaction that between the Actors' Fund of America and the Actors' Equity Association, on the one hand, and The New York Community Trust on the other, that the former are entitled to direct the payment of all income from the trust established by the testator through the regular charitable channels of the Actors' Fund of America. All the parties hereto excepting the heirs-at-law and next of kin of the testator, have shown and satisfied the court that the trust established by the testator is a trust for a public charity. The heirs-at-law and next of kin take the position, as above stated, that the trust is invalid, that the gift is for benevolent as well as charitable purposes; that it is vague, uncertain and indefinite as to its purposes and manner of *Page 245 
execution; that it violates the rule against perpetuities, and the agency directed to carry it out is legally incapable of performing the trust. These defendants argue that their attitude is based on the law of this state to the effect that distribution of a decedent's estate by way of a trust must be made exclusively to charity if the rule against perpetuities is not to be violated; that a gift for benevolent as well as charitable purposes renders the intent of the testator too indefinite for judicial execution; that the resolution of trust creating The New York Community Trust not only uses the terms charitable and benevolent commensurately, but that in its expressed purposes, the terms benevolent and charitable purposes are commingled indiscriminately, which voids the gift by the testator. I disagree with their stand.
Nowhere in the testator's will is there any mention of the term benevolent. The testator throughout his testament speaks of the charitable purposes of the Actors' Fund. The entire tenor of that instrument is predicated upon the relief of members of the theatrical profession from need and want. The language of the will is clear in expressing the testator's desire to donate a gift to a public charity for an indefinite number of persons for the purpose of promoting the welfare of mankind. I am satisfied that the trust as established by the testator is a public charity and is valid in fact and law. See Noice v. Schnell, 101 N.J. Eq. 252; 137 Atl. Rep. 582, wherein Mr. Justice Katzenbach, speaking for the Court of Errors and Appeals, defines the term "public charity" as follows:
"From the wealth of decisions on this subject there are some outstanding cases which contain definitions of a public charity to which reference is frequently made. The definition of a public charity given by Horace Binney in his argument before the United States Supreme Court in the Girard Will Case and adopted by the court (Vidal v. Girard, 43 U.S. 127; 11 L.Ed. 205), is one of the most striking. It is as follows:
"`Whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense — given from these motives and to these ends — free from the stain or taint of every consideration that is personal, private or selfish.' *Page 246 
"In the able opinion in this court of the late Judge Green inMacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652,
he approves the definition given by the eminent Massachusetts jurist, Justice Horace Gray, in Jackson v.Phillips et al., 96 Mass. 539, which is as follows:
"`A charity, in its legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint; by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described as to show that it is charitable in its nature.'
"Of the text-writers Perry gives a comprehensive definition of a charitable trust in these words: `Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted, and all gifts for the public convenience, benefit, utility or ornament, in whatever manner the donors desire to have them applied.' 2 Perry Trusts
(5th ed.) 314.
"Of the shorter definitions Lord Camden's definition in Jones
v. Williams, Amb. 651, is striking. He defines a charitable trust as, `A gift to the general public use which extends to the poor as well as to the rich.'
"Another condensed definition is that of Mr. Justice Swain inOuld v. Washington Hospital, 95 U.S. 311, which is given in these words: `A charitable use where neither law or public policy forbids may be applied to almost anything that tends to promote the well-doing and well-being of social man.'"
The fact that the testator sought to perpetuate his name in no wise detracts from the public charitable nature of the trust.First Camden, c., Trust Co. v. Collins, 110 N.J. Eq. 623;160 Atl. Rep. 848; also Woodstown National Bank and Trust Co. v.Snelbaker, 136 N.J. Eq. 62; 40 Atl. Rep. 2d 222. *Page 247 
The trust established by the testator being a trust for a public charity, as such does not violate the rule against perpetuities and is valid under our law. The rule against perpetuities of course is designed to prohibit the power of suspension of alienation by a testator. First Camden, c., TrustCo. v. Collins, supra; Martin v. Haycock, 140 N.J. Eq. 450;55 Atl. Rep. 2d 60.
I believe that the Actors' Fund of America, Actors' Equity Association and Chorus Equity Association stand on solid ground in their arguments that — (a) the will is specific in its terms in the creation of a charitable trust and the term "benevolent" is not found in the will. On the contrary it speaks of "the charitable purposes which I have herein determined upon," and "three of the then leading associations having for their object charitable purposes." (b) The will is definite and specific in its expression of the manner in which the trust is to be administered and does not rely on the discretion or the desires of the trustee or beneficiary. By its terms the income "shall be applied in such manner and form as shall be determined by the Actors' Equity Association * * * and shall be applied through said association for the purpose of supplying foot wear," c. (c) The will is specific in its terms in designating the purpose of the trust and is far from vague or uncertain providing as it does for "the purpose of supplying foot wear to present and future members of said association * * * to all needy actors of the Theatrical profession, * * *" and "for the purpose of supplying the needs of the Theatrical profession." (d) The will is specific in designating the beneficiaries of the trust and does not leave the same to the discretion of the trustee, designating by its terms as the beneficiaries of the same "present and future members of said association, and of the chorus Equity and to all needy Actors of the Theatrical profession. * * * for the people who cant buy shoes, even if they are not paid up members of Equity," and charitable purposes in which members of the theatrical profession are beneficiaries. (e) The will is specific in designating a competent trustee to administer the trust, designating as it does the "Guaranty Trust Company of New York City" as said trustee. *Page 248 
The defendant heirs-at-law and next of kin say that the Actors' Equity Association and Chorus Equity Association are voluntary unincorporated associations and are consequently incapable of taking the gift aforesaid for the gift is not outright, but is one of a perpetual continuing trust. However, the Actors' Fund of America, the beneficiary under the trust, is a corporation; and although the Actors' Equity Association and Chorus Equity Association are not, it is of no consequence as the trustee of the fund is, under the terms of the trust, the complainant the Guaranty Trust Company of New York, a corporation.
The complainant, as trustee, is obliged to turn over all of the income from the "Conrad Cantzen Memorial Fund" to the Actors' Fund of America; and the New York Community Trust has no voice in the allocation or distribution of the income at this time and the heirs-at-law and next of kin of the decedent have no interest therein.
In the construction of wills the duty of the court is to endeavor to ascertain the intent of the testator and not endeavor to rewrite the will of the testator or make a new will adverse to the testator's intention. The court will intervene when a will is ambiguous and its language misleads and confuses. It is bound to ascertain and give effect to the intention of the testator as expressed in his will. March v. Norristown Penn Trust Co.,123 N.J. Eq. 282; 197 Atl. Rep. 276; In re Fisler's Estate,131 N.J. Eq. 310; 25 Atl. Rep. 2d 265;
affirmed, 133 N.J. Eq. 421; 30 Atl. Rep. 2d894; Palmer v. Palmer, 135 N.J. Eq. 516;39 Atl. Rep. 2d 438.
The intent of the testator herein is clearly expressed in his testament. It was his intention to (a) establish a Memorial Fund, the net income of which was to be applied in a manner as determined by Actors' Equity Association for the purpose of furnishing shoes to needy actors of the theatrical profession; (b) if that purpose proved impractical then the Actors' Fund of America and Actors' Equity Association are obliged to determine the next best purpose of the fund; (c) in the event these associations ceased to exist, then the provisions of the resolution and declaration of trust of the New York Community Trust were to become operative and said Community *Page 249 
Trust was directed to confer with three of the then leading associations whose object was charitable purposes in which members of the theatrical profession are beneficiaries, to determine the uses of the said income.
The testator intended to insure distribution and application of the net income from his trust fund by the defendants Actors' Equity Association and Actors' Fund of America for such period of time as these associations continued in existence. That appears to be his dominant idea as disclosed by the will. In CommercialTrust Company of New Jersey v. Kohl, 131 N.J. Eq. 233;24 Atl. Rep. 2d 809, it was said: "The well-recognized rule governing the construction of wills is that the dominant idea pervading the testament must control; and minor considerations must yield if in conflict therewith."
Notwithstanding the act of the testator in incorporating by reference into his will the resolution of The New York Community Trust, his actual intention is readily ascertained from the subsequent detailed terms of his will. He directs that the net income from his trust shall be applied as the Actors' Equity Association shall determine, and further that that association and Actors' Fund of America should determine the application of the income from his trust fund if the principle purpose for which it was established proves impracticable or inappropriate. The testator clearly directs that only upon the cessation of the existence of the Actors' Fund of America and Actors' Equity Association will The New York Community Trust have any voice in the application of the income from his trust fund and then only after having conferred with three leading charitable associations in which members of the theatrical profession are beneficiaries.
I am not in accord with the contention of the defendant The New York Community Trust and the heirs-at-law and next of kin of the decedent, in asserting the priority of the former to the income of the trust, that by incorporating by reference the terms of the resolution and declaration of trust the testator intended his estate to become part of The New York Community Trust under the broad plan of charitable uses set forth in the said resolution. *Page 250 
The defendants Actors' Fund of America, Actors Equity Association and Chorus Equity Association in my opinion are entitled to the income of the trust fund to the exclusion of The New York Community Trust.
I shall advise a decree directing annual payment of all the income from the "Conrad Cantzen Memorial Fund" to the Actors' Fund of America which shall commit itself to buy shoes for needy members of the theatrical profession, and to use the balance for its general charitable purposes. *Page 251